[No. D013145. Fourth Dist., Div. One. Dec. 5, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
CARREA CHRISTOPHER, JR., Defendant and Appellant.

COUNSEL

Jeanne Keevan-Lynch, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I. Motley and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—Defendant Carrea Christopher, Jr., appeals from a judgment of conviction after a jury found him guilty of possessing cocaine. (Health &

Saf. Code, § 11350, subd. (a).) His sole appellate argument is the court erred in finding the prosecutor's peremptory challenge of the only African-American prospective juror did not constitute a prima facie case of group bias. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

During the course of selecting Christopher's jury, Sandra White was the only African-American to be seated as a potential juror. In response to voir dire questioning, White stated that she was married and the mother of two young children. She worked for the county tax assessor and her husband worked as a dispatcher for a concrete company. She had a friend who recently became a police officer. White also described one experience with the police department when her car was stolen. The police apprehended a suspect shortly after the theft was reported. She explained that neither her friendship with the police officer nor her experience when her car was stolen would affect her ability to be impartial.

Following a short voir dire, the prosecutor utilized his fourth peremptory challenge to excuse White. Defense counsel objected, citing *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. She recounted White's responses to the voir dire questioning and explained that she saw no basis other than race for the challenge. "If anything," counsel suggested, "she would have been a pro prosecution juror . . . ." After a short discussion with the prosecutor, the court stated: "It is my understanding of the law [that] *Wheeler* applies to a pattern of kicking Black people [off the jury]. She is the only Black juror excused, she was excused on peremptory challenge. Your motion under *Wheeler* is denied."[1]

## DISCUSSION

In *People* v. *Wheeler, supra,* 22 Cal.3d 258, the California Supreme Court held that peremptory challenges could not be constitutionally utilized by a prosecutor to exclude members of a cognizable group on the basis of group bias alone. (*Id.* at pp. 276-277.) In *Batson* v. *Kentucky* (1986) 476 U.S.

---

[1]Although believing it unnecessary, the court later allowed the prosecutor to make an in camera statement outside defense counsel's presence explaining his reasons for challenging Sandra White. After first noting he had previously passed a panel which included two Filipinos and one Colombian, the prosecutor stated: "[H]er expressions were extremely, she was extremely timid. I attempted to make eye contact, she wasn't making eye contact. When she was speaking, she tended to be looking at defense counsel as opposed to just me. Timid appearance, like she didn't feel comfortable or able to make a decision. [¶] When I asked her about the legalization of drugs, she gave a very puzzled look on her face, sort of agreed that she would agree that it should be illegal. She seemed puzzled, not very firm in that answer. That troubled me."

79, 96 [90 L.Ed.2d 69, 87-88, 106 S.Ct. 1712], the United States Supreme Court accepted a similar proposition. To implement these holdings, both courts adopted a like procedure. A defendant alleging an unconstitutional exclusion of some group from the jury must first make a prima facie showing of such exclusion. This is most often done by establishing a pattern of strikes eliminating most or all members of the group. (*Batson, supra,* 476 U.S. at p. 97 [90 L.Ed.2d at p. 88]; *Wheeler, supra,* 22 Cal.3d at p. 280.) Other factors to be considered include the nature of the questioning by the prosecutor, the racial or ethnic background of the defendant and the victim, and the similarity of the challenged jurors based on characteristics other than group membership. (*Batson, supra,* 476 U.S. at p. 97 [90 L.Ed.2d at p. 88]; *Wheeler, supra,* 22 Cal.3d at pp. 280-281; see also *People* v. *Turner* (1986) 42 Cal.3d 711, 719 [230 Cal.Rptr. 656, 726 P.2d 102].) Once a prima facie case has been established, the burden shifts to the prosecution to demonstrate a neutral explanation for the challenge.[2] (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1216 [255 Cal.Rptr. 569, 767 P.2d 1047].)

In *People* v. *Harvey* (1984) 163 Cal.App.3d 90 [208 Cal.Rptr. 910], this court considered a case in which the prosecutor peremptorily challenged two of three African-American jurors. Reviewing the post-*Wheeler* case law, we observed no cases in which the exclusion of two or fewer prospective jurors had been held to constitute a prima facie case under *Wheeler.* Commenting on this fact, we noted ". . . a considerable tension in this area of the law between the desirability of theoretical consistency and the need to develop workable rules which can be understood and applied by lawyers and trial judges. In theory at least, even the exclusion of a single prospective juror

---

[2]From the trial court's perspective, a multistep process is therefore required. Following the defendant's objection to the prosecutor's challenge, defense counsel must be given an opportunity to explain his or her basis for inferring that the challenge(s) are based on a group bias. (See *People* v. *Wheeler, supra,* 22 Cal.3d at pp. 280-281.) The prosecutor, in turn, should be offered the chance to argue that no prima facie case has been established. (See, e.g., *People* v. *Fuentes* (1991) 54 Cal.3d 707, 716, fn. 5 [286 Cal.Rptr. 792, 818 P.2d 75].) "After argument, the trial court should *expressly* rule on whether a prima facie showing has been made." (*Ibid.,* italics in original.) If it has, the prosecutor should offer justifications to support the challenge(s). If not, no explanations need be offered.

The trial court here is to be commended for heeding the California Supreme Court's repeated admonitions to make a finding on the question of a prima facie case before moving on to consider the prosecutor's justifications. In a close case such as this, however, where the trial court finds that no prima facie case has been established, we can understand why a prosecutor might wish to place on the record his or her reasons for striking a particular juror in the event an appellate court does not agree with the trial court's assessment on the prima facie case issue. The procedure utilized in this case, however (see *ante,* fn. 1), does little to protect the prosecutor. First, the prosecutor's reasons were presented ex parte where defense counsel had no opportunity to offer a response. Second, the trial court made no comment to indicate whether it would have accepted the explanation if one was required. These factors should be considered by prosecutors in deciding whether they wish to include an explanation on the record after the trial court has ruled that no explanation is required.

may be the product of an improper group bias. As a practical matter, however, the challenge of one or two jurors can rarely suggest a *pattern* of impermissible exclusion. Assuming that peremptory challenges are not to be replaced with a system requiring that counsel explain the basis for each and every challenge, it would appear that a pattern of exclusion must be evident before *Wheeler*'s prima facie case requirement can be satisfied." (*Id.* at p. 111, italics in original.)

 Christopher reads *Harvey* to hold that a prima facie case under *Wheeler/Batson* cannot be established unless a minimum of three peremptory challenges have been used to exclude members of the cognizable group. Although the trial court did not mention *Harvey*, Christopher impliedly contends it relied on this interpretation in denying his *Wheeler/Batson* motion. He goes on to argue that *Harvey* as so interpreted is incorrect, citing *People* v. *Turner, supra,* 42 Cal.3d at page 719 for the proposition that the exclusion of less than three jurors may constitute a prima facie showing of group bias. (See also *People* v. *Moss* (1986) 188 Cal.App.3d 268, 277 [233 Cal.Rptr. 153]; *People* v. *Granillo* (1987) 197 Cal.App.3d 110, 122-123 [242 Cal.Rptr. 639].) Recently in *People* v. *Fuentes, supra,* 54 Cal.3d 707, the California Supreme Court confirmed this view, explaining in a *Wheeler* context that even "a single discriminatory exclusion may violate a defendant's right to a representative jury." (*Id.* at p. 716, fn. 4.)

*Harvey* was decided before the United States Supreme Court in *Batson* referred to "a 'pattern' of strikes against black jurors in a particular venire . . . ." The coincidence of terminology—or perhaps our choice of terminology in *Harvey* —is unfortunate. As used by the *Batson* court, "pattern" refers to the number of challenged group members compared with the number of group members remaining on the jury. As we used the term in *Harvey*, we referred more generally to the concept of exclusions based on group bias. Thus, when we stated that a "pattern" was necessary, we meant simply that a prima facie showing requires some evidence of group bias.

*Harvey* must be understood in light of our statement of the issue there. After noting that the prosecutor's questioning of the two excluded jurors was not perfunctory and that it was difficult to ascertain how similar or different they were with respect to characteristics other than race, we commented: "We are thus faced with the question whether a prima facie showing under *Wheeler* is made out when defendant establishes *only* that the prosecutor has peremptorily challenged two of three prospective jurors who have the same racial background as the defendant and a different racial background from the victim(s)." (163 Cal.App.3d at p. 110, italics added.) We concluded such a showing was insufficient. The opinion did not say that the exclusion of one

or two jurors, coupled with other evidence, could *never* constitute the requisite demonstration. Indeed, in the later discussion cited by Christopher (*ante*, pp. 670-671) we stated that "the challenge of one or two jurors can *rarely* suggest a *pattern* of impermissible exclusion." (163 Cal.App.3d at p. 111, italics added.) Such terminology is inconsistent with the suggestion that *Harvey* was intended to establish an automatic numerical test.[3]

■ The question remains what type of evidence is necessary to establish a prima facie case of group bias where the number of peremptory challenges exercised by the prosecutor is insufficient to establish a "pattern" of systematic exclusion as *Batson* used the term. Christopher points out at least two federal circuits have adopted a rule that the exclusion of a single prospective juror of the same race or ethnic background as the defendant automatically constitutes a prima facie case where that juror is the only group member on the panel. (See *United States* v. *Chalan* (10th Cir. 1987) 812 F.2d 1302, 1314; *United States* v. *Roan Eagle* (8th Cir. 1989) 867 F.2d 436, 441; *United States* v. *Iron Moccasin* (8th Cir. 1989) 878 F.2d 226, 229.) Such a rule certainly has the virtue of simplicity, but at the same time it effectively eliminates the concept of a *peremptory* challenge when the prosecutor is faced with a particular set of circumstances totally outside his or her control. Indeed, such an automatic rule eliminates any burden of proof the defendant has to demonstrate a basis for suspecting a discriminatory motive. As soon as the solitary group member is struck, the prosecutor must justify the challenge. We conclude such a standard is inconsistent with *Batson*.

Even if the automatic rule is rejected, however, Christopher argues that other facts were presented to the trial court which together combine to produce a prima facie case. (See p. 669, *ante.*) ■ While we agree the case is a close one, we conclude Christopher's showing was insufficient to constitute a prima facie indication of group bias. Although the prosecutor challenged the sole African-American prospective juror, his questioning of that juror, while short, was not perfunctory nor unusually limited when compared with his questioning of other members of the panel. The fact that Christopher is a member of the same group as the excluded juror is relevant (see, e.g., *People* v. *Wheeler*, *supra*, 22 Cal.3d at p. 281), but unlike numerous other cases including our *Harvey* decision, there is no victim of a different racial or ethnic group to which the other jurors belonged. Finally, while the issue may be more of semantics than substance, we question whether the prima facie case should focus on the fact that, as here, the reasons for the challenge are not clearly obvious from the prospective juror's answers to the voir dire questions. To focus on those answers is in effect to

---

[3] Other courts have viewed *Harvey* similarly. (See *People* v. *Moss*, *supra*, 188 Cal.App.3d at p. 277, fn. 8.)

say that the prima facie case has already been established but that inquiry of the prosecutor is unnecessary because the explanation is self-evident.[4]

 In short, our decision in *Harvey* properly interpreted indicates that the prosecutor's challenge of one or two prospective jurors of the same racial or ethnic background as the defendant will not establish a prima facie case of impermissible group-based bias in the absence of other significant supporting evidence. We reaffirm that conclusion here. On the facts of this case, the trial court properly concluded Christopher had failed to establish a prima facie case that the prosecutor utilized his peremptory challenges improperly.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Todd, J., concurred.

A petition for a rehearing was denied January 3, 1992, and appellant's petition for review by the Supreme Court was denied February 27, 1992.

---

[4] Christopher's appellate counsel suggests that possession of cocaine may be perceived by majority jurors as a "Black" crime, giving the prosecutor an incentive for removing an African-American juror. She also represents that White was the only prospective juror asked *individually* by the prosecutor whether she or a family member had ever been arrested. While these are intriguing and—at least in the latter case—perhaps relevant arguments, the showing we are reviewing is the showing made by trial counsel to the trial court.