Filed 2/6/24 (unmodified opinion and initial 2/2/24 certification order attached)

CERTIFIED FOR PARTIAL PUBLICATION[1]

COURT OF APPEAL, FOURH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ESTEBAN JIMENEZ,<br><br>    Defendant and Appellant. | D081267<br><br>(Super. Ct. No. SCS319685)<br><br>ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |

THE COURT:

The opinion in this case filed January 3, 2024 was not certified for publication. It appearing the opinion met the standard for publication, an order certifying the opinion for publication was filed on February 2, 2024. That February 2, 2024, order is hereby modified to exclude part III from publication.

IT IS ORDERED that the words "Certified for Publication" appearing on page one of said opinion be deleted and replaced with "Certified for Partial

---

[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.

Publication" and the opinion is ordered published in the Official Reports with the exception of part III in conformity with this modification order.

DATO, Acting P. J.

Copies to:  All parties

Filed 1/3/24; certified for publication 2/2/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081267 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS319685) |
| ESTEBAN JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Maryann D'Addezio Kotler, Judge.  Affirmed in part, reversed in part, and remanded.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Appellant Esteban Jimenez of evading an officer while driving recklessly (Veh. Code, § 2800.2, subd. (a)) and leaving the scene of an accident (Veh. Code, § 20002, subd. (a)) and found true a prior strike

allegation. Jimenez appeals, arguing: (1) the prosecutor improperly exercised a peremptory challenge as to a juror in violation of Code of Civil Procedure[2] section 231.7 and the state and federal constitutions; and (2) there was insufficient evidence to convict Jimenez of a violation of Vehicle Code section 20002, subdivision (a).

We conclude: (1) the prosecutor did not violate section 231.7 or Jimenez's constitutional rights by exercising the peremptory challenge, and (2) the evidence was insufficient to establish that Jimenez violated Vehicle Code section 20002, subdivision (a). Therefore, we affirm Jimenez's conviction under Vehicle Code, section 2800.2, subdivision (a) and the prior strike allegation, and we reverse his conviction under Vehicle Code section 20002, subdivision (a).

## I. PROCEDURAL BACKGROUND

On April 6, 2022, the People filed an information charging Jimenez with evading an officer while driving recklessly (Veh. Code, § 2800.2, subd. (a), count 1); leaving the scene of an accident, commonly referred to as "hit and run"[3] (Veh. Code, § 20002, subd. (a), count 2); resisting an officer (Pen. Code, § 148, subd. (a)(1), count 3); and two counts of possession of a controlled substance (Health & Saf. Code, §§ 11377, subd. (a), 11350, subd. (a), counts 4 and 5). The People additionally alleged that Jimenez had a prior strike conviction (Pen. Code, §§ 667, subds. (b)–(i), 668, & 1170.12).

---

[2]     Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]     See *People v. Dimacali* (2019) 32 Cal.App.5th 822, 826 (*Dimacali*) (describing an offense pursuant to Vehicle Code section 20002, subdivision (a) as a "misdemeanor charge of leaving the scene of an accident causing only property damage . . . commonly referred to as hit and run.").

Jimenez pleaded not guilty to the charges and proceeded to trial. Prior to trial, the court dismissed count 3 at the People's request.

Following the close of evidence, the court dismissed counts 4 and 5 on Jimenez's motion. The jury found Jimenez guilty of counts 1 and 2 and found true the prior strike allegation. The court later sentenced Jimenez to the middle term on count 1, doubled for the strike for a total term of four years. The court stayed the sentence for count 2 under Penal Code section 654.

On appeal, Jimenez argues that: (1) the court erred by finding no violation of section 231.7 based on the prosecutor's exercise of a peremptory challenge as to Juror Number 8, which also violated his constitutional rights, and (2) sufficient evidence did not exist to prove Jimenez guilty of leaving the scene of an accident in violation of Vehicle Code section 20002, subdivision (a). We discuss each of these contentions in turn.

## II. PROSECUTOR'S EXERCISE OF PEREMPTORY CHALLENGE AS TO JUROR NUMBER 8

We begin with a discussion of the provisions of section 231.7. We will then discuss the facts as they unfolded during voir dire, and consider those facts and the trial court findings under section 231.7 in light of those facts. Finally, we turn to Jimenez's claims of violations of his constitutional rights.

A. *Section 231.7*

The Legislature enacted section 231.7, effective in criminal trials beginning January 1, 2022, to establish "a new process for identifying unlawful bias in the use of peremptory challenges during jury selection" because studies showed that the existing *Batson/Wheeler* analysis, discussed below, was inadequate to prevent racial discrimination. (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3070 (2019–2020 Reg. Sess.) as amended May 4, 2020, p. 1.) Section 231.7, subdivision (a) prohibits the "use [of] a

peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups" ("cognizable groups").  (*Id.* at subds. (a), (i), & (k).)  Discrimination in violation of this section need not be purposeful, but may involve "unconscious bias," which "includes implicit and institutional biases."  (*Id.* at subds. (d)(1) & (d)(2)(C).)

Once the opposing party timely objects to the peremptory challenge, the party seeking to exercise the peremptory challenge must state the reasons justifying the challenge.  (§ 231.7, subd. (c).)  The trial court then evaluates only the given reasons, without speculating on or assuming possible justification, "in light of the totality of the circumstances" and must sustain the objection if "there is a substantial likelihood that an objectively reasonable person would view [actual or perceived membership in a cognizable group] as a factor in the use of the peremptory challenge."  (*Id.* at subd. (d)(1).)  The statute defines "substantial likelihood" as "more than a mere possibility but less than a standard of more likely than not."  (*Id.* at subd. (d)(2)(B).)  Section 231.7, subdivision (d)(3) provides a non-exhaustive list of circumstances the court may consider in the analysis.  The court must "explain the reasons for its ruling on the record."  (*Id.* at subd. (d)(1).)

The statute dictates that certain reasons given by the challenging party are presumed invalid.  (§ 231.7, subd. (e).)  Presumptively invalid reasons include that the prospective juror at issue "[e]xpress[ed] a distrust of or ha[d] a negative experience with law enforcement or the criminal legal system," or the juror "[e]xpress[ed] a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner."  (*Id.* at subd. (e)(1)–(2).)  To overcome the presumption, "the party

4

exercising the peremptory challenge [must] show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's [actual or perceived membership in a cognizable group], and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (*Id.* at subd. (e).) Clear and convincing evidence to overcome the presumption exists when the court "determine[s] that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.* at subd. (f).)

Once the court has determined that the party seeking to exercise the peremptory challenge has overcome the presumption of invalidity as to a stated reason, the court may consider that stated reason in the section 231.7, subdivision (d)(1) analysis as to whether it is substantially likely that a reasonable person would consider that race was a factor in the challenge. (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 805 (*Ortiz*).)

B. *Voir Dire Facts*

Prospective Juror Number 8 was a Latina who worked as a school secretary for a school district and had never served on a jury. During voir dire, the defense attorney asked Juror Number 8 if she would follow the law even if she disagreed with it, and she responded: "I will always follow the law. I don't break the law. However, I see sometimes the law is not—it's depending on the color of your skin." She further explained, "I believe the law was supposed to be blind, but I don't think it's blind. I think there's—color of a person or their status, economic status, is a consideration." At that time, she stated she could still be fair and follow the law.

The prosecutor later asked the prospective jurors if anyone would have a problem evaluating the testimony of law enforcement officers. Juror Number 4, a white woman who worked as a librarian for a public library, volunteered, stating she believes that it is "common" for officers to have "institutional" bias based on interactions between non-white patrons and law enforcement she had witnessed. Because of these experiences, she could not say "say 100 percent that it wouldn't influence [her] decision."

The prosecutor then turned to Juror Number 8 because she had previously mentioned "a person's race and how that affects law enforcement." He asked her if she would "have a difficult time being fair and considering only the evidence that [is] presented" even if "there's no evidence that's presented" regarding how race affects law enforcement. Juror Number 8 replied, "I think it would be difficult. I'm not saying I couldn't do it. I also think that I—I also think implicit bias is definitely a thing that I could do without knowing I did it." When the prosecutor again asked her whether "it would be difficult" to give the testimony of the officers "a fair shake," she confirmed, "I like to think it wouldn't be [difficult to be fair]. But I feel like it could be one of those things where it's, like, always in the back of my mind as much as I try to set it aside."

After the close of voir dire, the prosecution requested Juror Number 4 be excused for cause, and the defense objected; the court granted the prosecution's request. The prosecution also requested the court dismiss six other jurors because they stated they could not be fair.

After dismissals for cause, the parties began peremptory challenges. The prosecutor first exercised a peremptory challenge as to Juror Number 16, a white male teacher who had not previously served on a jury, without objection from the defense. Next, the prosecutor sought to dismiss Juror

6

Number 8 using a peremptory challenge.  Defense counsel objected under section 231.7 because the prospective juror stated "during voir dire she believes the law has been imposed differently depending on your skin color."

Pursuant to the section 231.7 analysis, the prosecutor provided the following reasons for exercising the peremptory challenge:  (1) Juror Number 8's beliefs about the racial bias of law enforcement officers, who would be the only witnesses in the case; (2) Juror Number 8 was employed by a school district, which he believed rendered her more likely to give second chances, especially for actions such individuals may view as not "egregious"; and (3) Juror Number 8 had not previously served on a jury.  The prosecutor conceded that his first stated reason was presumptively invalid.  However, he argued that clear and convincing evidence established that this reason was unrelated to conscious or unconscious bias and instead "bear[s] on that juror's ability to be fair and impartial in the case. . . ."

In the section 231.7 analysis, the court began by examining the subdivision (d)(3), factors to determine whether there was "a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, religious affiliation, or perceived membership in any of those groups as a factor in the use of peremptory challenge."  The court noted: (1) the defendant was of the same perceived cognizable group as the excused juror (*id.* at (d)(3)(A)(i)); (2) there was no victim (*id.* at subd. (d)(3)(A)(ii)); (3) at least one of the People's witnesses was in the same cognizable group as the juror (*id.* at subd. (d)(3)(A)(iii)); (4) race did not bear on the facts of the case (*id.* at subd. (d)(3)(B)); (5) the prosecutor did not ask Juror Number 8 many questions, but he did not ask her different questions from other jurors and posed the same type of questions as he did to Juror Number 4 (*id.* at

7

subd. (d)(3)(C)); (6) the prosecutor had otherwise exercised a peremptory challenge only as to a white male educator (*id.* at subd. (d)(3)(D)); (7) the reasons did not appear disproportionately associated with membership in the cognizable group (*id.* at subd. (d)(3)(E)); (8) the prosecutor's reasoning was supported by the record (*id.* at subd. (d)(3)(F)); and (9) there was no evidence that the prosecution had a history of prior discriminatory use of peremptory challenges (*id.* at subd. (d)(3)(G)).

The court concluded that the People had not violated section 231.7 in exercising a peremptory challenge as to Juror Number 8:

> "Whether the reason provided is presumptively invalid. I'll note that one of the reasons is presumptively invalid. And whether the reason provided is among the list associated with improper discrimination. The last reason is.
>
> "On balance, however, I at this time am going to find as follows. After evaluating the reasons given to justify the peremptory challenge, in light of the totality of the circumstances, the Court finds that there is not a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender identity, sexual orientation, national origin, or religious affiliation or perceived membership in any of those groups as a factor in the use of the peremptory challenge.
>
> "The reasons for the ruling are that [the prosecutor] has, I believe, sufficiently shown that the reasons for dismissing this juror are his practice that he does not prefer jurors that don't have prior jury service and work in a system that is prone to second chances, being somewhat forgiving. I do think that he's overcome the—shown by clear and convincing evidence that race is not—the ethnicity and race of Juror Number 8 was not the reason that he is asking to have excused and that his exercise is unrelated to her race. So those will be the Court's findings."

8

After the court's ruling, the prosecutor later exercised additional peremptory challenges as to two other school district employees, a substitute teacher who had served on a jury and a retired school secretary who had not served on a jury. The prosecutor did not challenge all apparently Latino prospective jurors.

Defense counsel renewed his section 231.7 objection at the conclusion of peremptory challenges, noting that one alternate was a teacher and the other may work in a school. The court maintained her prior ruling, noting that the prosecutor need not have an "exact formula" but was generally consistent: "he has shown he has, indeed, excused other jurors who have teaching experience or work in the school district."

C. *Standard of Review*

Section 231.7 specifies standards for our review of the trial court's decision. We review the trial court's denial of an objection under this statute de novo and factual findings for substantial evidence. (§ 231.7, subd. (j).) However, the statute further instructs us to consider only the reasons actually given by the party exercising the peremptory challenge and to avoid imputing findings on the trial court not expressly stated on the record. (*Id.* at subd. (f).) Error by the trial court in denying an objection under this section is deemed prejudicial and requires reversal. (*Id.* at subd. (j).)

D. *Analysis under Section 231.7*

1. *Presumptive Invalidity*

The People do not dispute the trial court's finding that one reason the prosecutor gave for exercising the peremptory challenge, Juror Number 8's belief that there is racial bias in law enforcement, was presumptively invalid. The question becomes whether the court erred by finding the People overcame the presumption of invalidity. We conclude the court did not err by

9

finding that there was clear and convincing evidence to show that an objectively reasonable person would view the prosecutor's presumptively invalid reason to be related to the juror's ability to be fair and impartial, rather than to her membership in a cognizable group.

As required by section 231.7, subdivision (j), we consider only the reason given by the People, that Juror Number 8 believed there is racial bias in application of the law, and his argument that this reason "bear[s] on that juror's ability to be fair and impartial in the case." We likewise limit our review to the trial court findings, including that the prosecutor had overcome the presumption of invalidity by clear and convincing evidence. The statute does not limit our ability to consider undisputed facts in the record that are relevant to the prosecutor's reason or the court's finding during our de novo review.

One such undisputed fact in the record is Juror Number 8's repeated acknowledgement that she would have difficulty setting aside her bias against law enforcement officers to fairly consider their testimony, despite her initial statements she could be fair. When further questioned by the prosecutor, Juror Number 8 stated that, because of her views on law enforcement and race, she would have a difficult time fairly evaluating the testimony of law enforcement witnesses and might have an "implicit bias" against the officers without realizing. Even if she sought to be fair, she stated her bias might be "always in the back of my mind as much as I try to set it aside." An objectively reasonable person would view the prosecutor's challenge of Juror Number 8 due to her feelings on law enforcement as

related to her ability to be fair based on her repeated acknowledgement that she would have difficulty setting aside her bias and being fair.[4]

Additionally, the prosecutor also sought to excuse Juror Number 4, a white woman who had expressed similar feelings to Juror Number 8 and similarly could not confirm these feelings would not influence her decision. The prosecutor explained the similarities on the record: "So during my voir dire I did address, I believe, specifically Juror Number 4, who was excused for cause. During that questioning I did make reference and speak as well to Juror Number 8, due to the fact they shared many of the same sentiments regarding the criminal justice system, regarding law enforcement officers." The prosecutor's excusing Juror Number 4 for cause, and comparison of her views to Juror Number 8's, further supports the objectively reasonable conclusion that the prosecutor's reference to this reason was related to Juror Number 8's ability to be fair, not to her cognizable group membership.

Because the prosecution overcame the presumption of invalidity as to its first stated reason, we consider this reason as a valid reason, among the other stated reasons, in the section 231.7, subdivision (d)(1) totality of the circumstances analysis.

---

[4] Although having views that impair a prospective juror's ability to be fair is typically related to a challenge for cause (see *People v. Rhoades* (2019) 8 Cal.5th 393, 435 (*Rhoades*)), by its terms, section 231.7, subdivision (e), renders the ability to be fair and impartial relevant to the exercise of a peremptory challenge for a presumptively invalid reason. The party seeking to exercise a peremptory challenge can overcome the presumptive invalidity of a reason *only* by establishing that the reason "bear[s] on" the individual's "ability to be fair and impartial in the case." (§ 231.7, subd. (e).) Further, our Supreme Court also recognized that a basis for cause can be the same as a basis for a peremptory challenge. (See *Rhoades*, at p. 435.)

2. *Totality of the Circumstances*

On appeal, Jimenez argues the prosecutor violated section 231.7 based on the following factors: (1) his and Juror Number 8's membership in the same cognizable group (§ 231.7, subd. (d)(3)(A)(i)); (2) the prosecutor's failure to question Juror Number 8 regarding any effects of her employment with a school district (*id.* at subd. (d)(3)(C)(i) & (ii)); (3) the questions the prosecutor asked Juror Number 8 were different from other jurors outside the cognizable group (*id.* at subd. (d)(3)(C)(iii)); (4) the belief that racial minorities receive different treatment under the law "might be disproportionately associated with a" cognizable group (*id.* at subd. (d)(3)(E)); and (5) the prosecutor's explanation that educators are more likely to be given second chances is "unsupported by the record" (*id.* at subd. (d)(3)(F)). We do not find these arguments persuasive.

Although Juror Number 8 appeared to belong to the same cognizable group as Jimenez, at least one of the People's witnesses was also a member of that group, a factor under section 231.7, subdivision (d)(3)(A)(iii). Together, these factors are neutral.

While the prosecutor failed to question Juror Number 8 regarding any effect of her employment as a school secretary on her ability to participate as a juror, he likewise did not question the three other jurors regarding their employment by a school district prior to exercising peremptory challenges of them. At least one of them was not a member of Juror Number 8's cognizable group. Similarly, while there is no data on the record to support the prosecutor's belief that the educators are more likely to provide second chances, there is evidence in the record that the prosecutor applied this belief on a race neutral basis as to the main panel of jurors. Thus, this subsection does not weigh in favor of the conclusion that an objectively reasonable

person would view Juror Number 8's cognizable group as a factor in the use of the peremptory challenge.

As previously discussed, the prosecutor did question Juror Number 8 regarding her ability to be fair based on her belief that law enforcement has a racial bias. These questions were similar to those he asked of Juror Number 4, who did not appear to be a member of a cognizable group but expressed similar views to Juror Number 8. Thus, this factor weighs against finding a violation of section 231.7.

It is true that Juror Number 8's belief that race affects how the law applies "might be disproportionately associated with" a cognizable group. (§ 231.7, subd. (d)(3)(E)). However, the Legislature placed this reason into the category of presumptively invalid reasons because it was disproportionately associated with protected groups. (See Legis. Counsel's Dig., Assem. Bill No. 3070 (2019–2020 Reg. Sess.), Summary Dig. p. 2.) And we have already determined that, in this case, there was clear and convincing evidence that this reason bore on Juror Number 8's ability to be fair and impartial. We need not consider this reason again here; as determined by the court, the prosecution's other two reasons do not implicate this factor, and Jimenez does not argue otherwise.

We agree with Jimenez that the record does not support one of the prosecutor's reason for challenging Juror Number 8, i.e. she lacked prior jury service. Unlike as to prospective jurors employed by school districts, the prosecutor did not exercise peremptory challenges on multiple other jurors who merely lacked jury service. The only non-school district employee the prosecutor challenged had prior jury service.

Even disregarding the "lack of jury service" reason, in the totality of the circumstances, we conclude that there is not a substantial likelihood that an

13

objectively reasonable person would view cognizable group membership as a factor in the prosecutor's peremptory challenge of Juror Number 8.  Rather, an objectively reasonable person would determine that the prosecutor exercised the challenge because of Juror Number 8's inability to be fair based on her view of law enforcement racial bias and her employment by a school district.  He consistently sought to excuse or challenge prospective jurors who expressed a potential inability to be fair.  And, in addition to Juror Number 8, the prosecutor used peremptory challenges on three prospective jurors who worked for school districts, including at least one non-cognizable group member and one secretary.  Finally, the prosecutor did not seek to remove all Latino prospective jurors.

The court did not err by concluding the prosecutor did not violate section 231.7 in exercising a peremptory challenge of Juror Number 8.

E. *Batson/Wheeler Analysis (Constitutional Challenges)*

Jimenez additionally argues that the People's peremptory challenge of Juror Number 8 violated his rights under the United States and California Constitutions.  Although Jimenez did not raise the issue of constitutional violations in the trial court, "[a] motion brought under [section 231.7] shall also be deemed a sufficient presentation of claims asserting the

14

discriminatory exclusion of jurors in violation of the United States and California Constitutions." (§ 231.7, subd. (d)(1).)[5]

Claims of unconstitutional challenges of prospective jurors are governed by a framework established by *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*). "Review of a trial court's denial of a *Batson/Wheeler* motion is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] 'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges " 'with great restraint.' " [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. [Citation.]' " (*People v. Lenix* (2008) 44 Cal.4th 602, 613–614.)

Under *Batson/Wheeler* jurisprudence, " '[t]here 'is a rebuttable presumption that a peremptory challenge is being exercised properly, and the

---

[5] Our colleagues in the Sixth District determined that the failure of a section 231.7 claim necessarily dooms a constitutional claim: "Because section 231.7 provides broader protection than that afforded under *Batson/Wheeler* [citation], Ortiz's failure to demonstrate error under section 231.7 necessarily leads us to conclude that there was no violation of his constitutional rights when the prosecutor exercised a peremptory challenge against S.H." (*Ortiz, supra,* 96 Cal.App.5th at p. 808.) We decline to express an opinion regarding whether in every case, a determination of unconstitutional use of a peremptory challenge is precluded by a determination that no section 231.7 violation exists. Instead, we limit our holding to the conclusion that in this case, Jimenez has not established an unconstitutional peremptory challenge under *Batson/Wheeler*.

15

burden is on the opposing party to demonstrate impermissible discrimination.' " (*People v. Armstrong* (2019) 6 Cal.5th 735, 766 (*Armstrong*).)

Under a three-step process, a defendant must first " 'make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." ' " (*Armstrong, supra*, 6 Cal.5th at p. 766.) In this step, the party opposing the peremptory challenge must provide " ' "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." ' " (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158 (*Gutierrez*).)

Because Jimenez relies on his section 231.7 claim to preserve his constitutional peremptory challenge claim, the court did not address whether Jimenez established a prima facie case of discrimination under *Batson/Wheeler*. On appeal, Jimenez merely argues, "[a]ppellant established a prima facie case with the prosecutor's use of a peremptory challenge to remove Juror Number Eight who was Hispanic." The mere fact that Juror Number 8 was Hispanic is insufficient to establish a prima facie case of intentional discrimination, and Jimenez fails to point to any other evidence. (*People v. Christopher* (1991) 1 Cal.App.4th 666, 672.) Further, from our conclusion in the preceding section (that under the totality of the circumstances, there was not a substantial likelihood that an objectively reasonable person would view race as a factor in the prosecutor's peremptory challenge of Juror Number 8), it necessarily follows that the evidence was insufficient to permit the trial judge to draw an inference that discrimination has occurred. Therefore, Jimenez has failed to establish a prima facie case of impermissible discrimination.

16

But even if Jimenez had been able to establish the prima facie case, he cannot meet the remaining requirements under *Batson/Wheeler*. Under the second step, "once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." (*Armstrong*, 6 Cal.5th at p. 766.) The race neutral explanation involves " 'a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges,' " which exists " ' "[u]nless a discriminatory intent is inherent in the prosecutor's explanation." ' " (*Gutierrez, supra*, 2 Cal.5th at p. 1158.)

Here, the prosecutor specified legitimate reasons that did not have inherent discriminatory intent. "Courts have recognized the race neutrality" of occupation-based challenges, including of teachers, under *Batson/Wheeler*. (See *People v. Landry* (1996) 49 Cal.App.4th 785, 790.) A prospective juror's expression of doubts as to whether he or she can be fair can be a race neutral reason. (See *People v. DeHoyos* (2013) 57 Cal.4th 79, 112.) "A prospective juror of any ethnicity might equally share" general concerns about racial bias in law enforcement such as "the overincarceration of African-Americans in general." (*Armstrong, supra*, 6 Cal.5th at p. 784.) Indeed, this case exemplifies that possibility, with Juror Number 4, who was white, and Juror Number 8, who was Latina, sharing similar feelings. "In exercising peremptory challenges, advocates may excuse jurors who have such concerns, so long as their reasoning does not rest on impermissible group bias." (*Ibid.*)

"Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' " [Citations.] The defendant's ultimate burden is to demonstrate that 'it was more likely than not that the challenge was improperly motivated." ' " (*Armstrong, supra,* 6 Cal.5th at p. 766.) The court

17

determines whether there was purposeful discrimination based on "the subjective genuineness of the reason" in consideration of the credibility of the challenging party. (*Gutierrez, supra*, 2 Cal.5th at pp. 1158–1159.)

The record demonstrates that the court engaged in a sincere and reasoned effort to evaluate the reasons for the challenge through its thorough section 231.7 discussion. The court believed the prosecutor was credible and his reasons were subjectively genuine, noting that the prosecutor had "sufficiently shown that the reasons for dismissing this juror are his practice that he does not prefer jurors that don't have prior jury service and work in a system that is prone to second chances, being somewhat forgiving." The judge understood that "he balances all of these things." She found by clear and convincing evidence that the prosecutor was not engaged in group bias, stating "the ethnicity and race of Juror Number 8 was not the reason that he is asking to have [her] excused." Substantial evidence supports the court's position. The prosecutor repeatedly challenged school district employees regardless of race, and multiple Latinos remained on the jury. (See *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 763 [A " ' "prosecutor's acceptance of a jury panel including multiple African-American prospective jurors, 'while not conclusive, was "an indication of the prosecutor's good faith in exercising his peremptories . . . .' " ' "].) The prosecutor had also excused Juror Number 4, who was not a member of a cognizable racial or ethnic group, due to her beliefs similar to those of Juror Number 8.

We thus conclude Jimenez did not demonstrate the prosecutor engaged in unconstitutional purposeful discrimination by exercising a peremptory challenge of Juror Number 8.

## III. SUFFICIENCY OF THE EVIDENCE

As noted above, on appeal, Jimenez contends that the evidence was insufficient to support his conviction for leaving the scene of an accident ("hit and run") in violation of Vehicle Code section 20002, subdivision (a).

A. *Evidence at Trial*

On December 15, 2020, National City Police Officer Ryan Mariota was driving a marked patrol vehicle with his partner, Officer Robert Rude (together, the Officers), in the passenger seat. The patrol vehicle was a black and white Ford Explorer with National City Police decals on both the driver and passenger sides, with overhead red and blue lights. As the Officers were driving, a gray Toyota Corolla ignored a traffic sign and cut in front of their patrol vehicle, nearly causing a collision. The Officers activated the patrol vehicle's lights and siren while pursuing the Corolla, which accelerated rather than pulling over to the right side of the road. The Officers pursued the vehicle for approximately 1.3 miles after they activated their siren.

At some time during the pursuit, Officer Rude saw Jimenez driving the Corolla. Officer Mariota also recognized Jimenez as the driver of the vehicle.

During the pursuit, Jimenez committed multiple traffic violations. As the Officers pursued him, Jimenez drove at speeds varying between approximately 60 miles per hour and 100 miles per hour on a street with a 35 miles per hour speed limit, drove through multiple red lights without stopping, and drove on the wrong side of the road, coming close to other vehicles on the road. Eventually, the Corolla came to a stop when it drove onto the sidewalk and collided with a short cinder block wall, causing a large cloud of smoke and debris. The Officers parked their vehicle.

Officer Michael Acevedo, a patrol officer, responded to a radio request at the crashed vehicle's location. When he arrived, he saw the Corolla on the

sidewalk, crashed into the wall.  At the time, no other police officers were present.  He saw that the driver's seat of the vehicle was empty, and the passenger seat was occupied by an individual other than Jimenez.  Officer Acevedo also noticed that there was a property management sign on the property containing the wall into which the vehicle crashed.  Officer Mariota was present at the hospital with Jimenez at some point after the collision.

B. *Standard of Review*

" 'When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence—that is, evidence which is reasonable, credible, and of solid value' " that would support a finding beyond a reasonable doubt.' [Citation] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.' [Citation.]" (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)  "In cases in which the People rely primarily on circumstantial evidence, the standard of review is the same." (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)  " 'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Navarro,* at p. 302.)

C. *Analysis*

To establish a violation of Vehicle Code section 20002, subdivision (a), the People must prove that a defendant driver: " '(1) knew he or she was involved in an accident; (2) knew damage [to any property] resulted from the accident; and (3) knowingly and willfully left the scene of the accident

(4) without giving the required information . . . .' " (*Dimacali, supra*, 32 Cal.App.5th at p. 829.) The driver must immediately either give the required information to the owner or person in charge of the property or leave a written notice in a conspicuous place on the damaged property and notify the police department. (Veh. Code, § 20002, subd. (a)(1)–(2).)

In this case, Officers Rude and Mariota testified Jimenez drove his vehicle onto the sidewalk and into a wall while attempting to evade the officers. This evidence gives rise to the reasonable inference that Jimenez knew he was involved in an accident. Officer Acevedo testified that the driver's seat was empty upon his arrival on the scene. This evidence supports a finding that Jimenez had left the scene. However, there was no evidence at trial as to how long after the accident Officer Acevedo arrived; whether Jimenez had departed the scene knowingly and willfully; or whether Jimenez had provided the information to the wall owner and police as required by Vehicle Code section 20002, subdivision (a)(1)–(2). Given the complete lack of evidence on the issue, it would not have been possible for the jury to come to any reasonable inferences from the evidence. A rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt, and therefore we conclude that there was insufficient evidence to convict Jimenez of a violation of Vehicle Code section 20002, subdivision (a).

## DISPOSITION

We reverse the judgment as to count 2, and we remand to the trial court with directions to vacate the conviction on that count and to prepare an amended abstract of judgment.  We affirm the judgment in all other respects.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.

Filed 2/2/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ESTEBAN JIMENEZ,<br><br>    Defendant and Appellant. | D081267<br><br>(Super. Ct. No. SCS319685)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed January 3, 2024 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

DATO, Acting P. J.

Copies to: All parties